**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Hinginio CORTEZ, Appellant.**

Superior Court of Pennsylvania.

Argued June 8, 2004.

Filed Oct. 8, 2004.

John P. Cotter, Philadelphia, for appellant.

Hugh J. Burns, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: KLEIN, OLSZEWSKI, and KELLY, JJ.

OPINION BY KLEIN, J.:

¶ 1 Defendant Hinginio Cortez appeals from the judgment of sentence following conviction for two counts of Possession with Intent to Deliver (PWID) a controlled substance. We deny the motion for a new trial based on improper consolidation of charges on the two separate occasions, but we grant the motion to vacate the judgment of sentence and remand for re-sentencing.

¶ 2 Cortez raises two issues for our review: (1) whether the trial court erred in consolidating two separate PWID charges

for trial; and (2) whether the trial court abused its discretion in sentencing Cortez to an aggregate sentence of fifteen to thirty years imprisonment

¶ 3 The two charges (both involving PWID of heroin labeled "Hurricane Mitch" in similar packaging), occurred within a block and a half of each other. The second incident took place about five months after the first. We believe that the "Hurricane Mitch" label, the similarly colored drug packaging and the physical proximity of the two incidents indicate enough of a common scheme or plan that we cannot deem the trial court's decision to consolidate a manifest abuse of discretion and clear injustice to the defendant.

¶ 4 However, we believe that the reasons stated on the record do not justify an aggregate sentence of 15 to 30 years, and accordingly remand for re-sentencing before a different judge. We also believe that Cortez raised a substantial question by arguing that the sentence was contrary to the fundamental norms which underlie the sentencing process.

FACTUAL HISTORY

¶ 5 The facts, viewed in the light most favorable to the Commonwealth, are as follows. On February 20, 1999, the police were investigating the high-drug area of 2900 Hancock Street in Philadelphia. During the surveillance, their attention was drawn to 187 Birch Street. The police observed several Hispanic males enter the residence and leave minutes later with red, white, and blue drawstring bags. Soon thereafter, Defendant Cortez left the residence carrying an identical bag. Cortez placed the bag into a seemingly abandoned burgundy Mazda (the vehicle had neither a license plate nor current inspection stickers, it had flat tires, and it contained

trash). As the police were making arrests in the area, they observed Cortez once again emerge from the residence, approach the vehicle, and lock the vehicle doors.

¶ 6 On February 27, 1999, the police began a surveillance of 187 Birch Street. Once again, the police observed Hispanic males enter the residence and leave shortly thereafter. After about forty-five to fifty minutes of surveillance, Cortez emerged from the residence carrying a bag, which he placed into the "abandoned" Mazda. Cortez then entered a burgundy Oldsmobile and left the area with two other Hispanic men.

¶ 7 After two more hours of surveillance, the police approached the Mazda and opened the unlocked door.[1] Upon inspection, the officers saw that the bag Cortez placed into the vehicle contained 337 clear, heat-sealed packets, 467 orange Ziplock packets, and $4,389. Each clear packet contained a blue glassine packet stamped "Hurricane Mitch." The blue glassine packets contained white powder later identified as heroin. The orange Ziplock packets each contained white chunks later identified as crack cocaine.

¶ 8 Upon this discovery, the police located the Oldsmobile and arrested Cortez. The owner of the Oldsmobile, aware that the car was about to be confiscated, removed her purse from the trunk of the car. The police observed a large amount of money ($7,180) sticking out of her purse. Accordingly, the purse and money were confiscated and were found to have traces of drugs on them.

¶ 9 Five months later, on July 28, 1999, the police were conducting surveillance in the 2800 block of Palethorp Street, which is only one block away from 187 Birch

---

1. Between the time that Cortez placed the bag into the vehicle and the time when the police opened the vehicle, nobody approached or placed any items inside the vehicle.

Street. The police observed Cortez, previously released on bail, talking with a woman identified as Ms. Rivera. During the conversation, a white male approached, spoke with and handed money to Cortez. Cortez then walked approximately 10 to 15 feet away, bent down to the ground and picked up some objects, returned to the man and gave him the objects. A similar routine was repeated with two other customers.[2]

¶ 10 The police stopped the second customer, Ms. Warner, and recovered an orange packet containing crack cocaine. The police also stopped the third customer, Mr. Miller, and recovered two orange packets of crack cocaine and one clear packet containing a blue glassine packet. The blue glassine packet contained heroin and was stamped "Hurricane Mitch." Finally, the police stopped Ms. Rivera, who was carrying 18 orange packets of crack cocaine.

¶ 11 After the police stopped the above individuals, the police searched the area where Cortez had bent down and picked up various objects. At that location, the police found a McDonald's cup containing eight clear packets, each containing a blue glassine packet. The blue glassine packets contained heroin and were marked "Hurricane Mitch."

I. Consolidation of Two Separate Cases

 ¶ 12 Consolidation of separate informations lies within the sound discretion of the trial court and we will not overturn the trial court's decision absent "manifest abuse of discretion or prejudice and clear injustice to the defendant." *Commonwealth v. Boyd*, 315 Pa.Super. 308, 461 A.2d 1294, 1298 (1983) (citations omitted).

¶ 13 Even were there an abuse of discretion, we do not believe that Cortez has established prejudice. Without prejudice, we cannot say that the consolidation was improper.

¶ 14 This issue was discussed in a relatively recent Supreme Court opinion written by Chief Justice Cappy, *Commonwealth v. Natividad*, 565 Pa. 348, 773 A.2d 167 (2001). In *Natividad*, the charge was murder and the issue was identity. The shooter was wearing a lumberjack style jacket and drove away in a dark Lincoln. A man stole a dark Lincoln at gunpoint with what could have been a similar gun, and the owner of the Lincoln had a lumberjack style jacket in his truck. The Supreme Court held that the evidence from the robbery was relevant to establish the identity of the person who shot the deceased. The Court said:

> Given the temporal separation and the distinct nature of the conduct at issue in the two incidents, we believe that the jury was capable of keeping the evidence separate as to each criminal act. Appellant fails to allege any specific prejudice resulting from the consolidation of the two indictments for trial. Appellant puts forth only a scant single paragraph in support of his claim, arguing a potential prejudice arising simply from the fact of consolidation itself. Arguing a potential for error is insufficient to obtain relief; actual error affecting the outcome of the proceedings must be established. As we find no abuse of discretion in granting the motion to consolidate the two indictments for trial, and denying the motion to sever, appellant is entitled to no relief on this basis.

773 A.2d at 174.

 ¶ 15 The situation is similar in the instant case. In his brief, Cortez barely

---

**2.** It appears that Ms. Rivera also participated in these transactions. In the subsequent transactions, Cortez also got small objects

from Rivera as well as from the location on the ground ten to fifteen feet away.

argues that the consolidation prejudiced him. Just as in *Natividad*, the two crimes were different enough that there was no risk of jury confusion. One incident involved placing the drugs in what appeared to be an abandoned car. The other was an actual sale. Moreover, the judge's charge clearly indicated the difference between the two events. The judge instructed, "Now, you should bear in mind that these are two separate incidents. One incident does not necessarily prove the activity of the other. So, you should consider these two circumstances separate [sic] when you are considering the verdict." (N.T. 11/9/00, 176).

¶ 16 Moreover, since there was no actual sale in the placing of the drugs in the "abandoned" car, evidence of a later sale in the same neighborhood would be relevant in the first incident on the issue of whether Cortez was a user or seller. *See Commonwealth v. Burton,* 770 A.2d 771, 777–78 (Pa.Super.2001). Although there was a five-month time difference, the incidents were in the same neighborhood, about a block and a half apart, and the drugs were sold in identical packaging, each bearing the name "Hurricane Mitch." There is enough similarity to outweigh the time difference. Because of these similarities, we cannot say that the time frame of five months is so remote that the judge abused his discretion by consolidating the cases. *See Commonwealth v. Miller,* 541 Pa. 531, 664 A.2d 1310 (1995); *Commonwealth v. Shively,* 492 Pa. 411, 424 A.2d 1257, 1259 (1980).

¶ 17 For these reasons, we do not believe it was an abuse of discretion to consolidate the two cases, and affirm the denial of the motion for new trial on those grounds.

**II. The Length of the Sentence**

■ ¶ 18 The Commonwealth contends that the Cortez waived any challenge to his sentence because he failed to raise a substantial question. To the contrary, Cortez did in fact raise a substantial question when he argued that the sentence was "contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Eicher,* 413 Pa.Super. 235, 605 A.2d 337, 354 (1992).

■ ¶ 19 We further hold that absent more reasons than stated on the record, Cortez's aggregate sentence of 15 to 30 years appears to be excessive. At the sentencing hearing, and subsequently in his full 1925(a) opinion, the trial judge, commented that his grounds for the sentence were based, in part, on the fact that Cortez "was spreading his cancer throughout many neighborhoods and many families." (N.T. Sentencing Hearing, 5/21/2001 at 11). The record, however, does not support this conclusion. Both arrests took place within one and one-half blocks of each another, in the same neighborhood. The Commonwealth provided no evidence about the location of the buyers. There was no evidence beyond speculation that the amount of drugs indicated they were to be delivered to a much wider area.

■ ¶ 20 The only other reason given by the trial judge at the sentencing hearing for going outside the guidelines was "...the fact that he was a fugitive and fled and as a result of that, that gives a further indication of lack of remorse and guilt in this case." While flight can be indicative of consciousness of guilt, it does not serve to show lack of remorse after one is apprehended. This appears to be a significant extra punishment to the defendant for not appearing in court, which can be separately punishable by contempt.[3]

3. It is noted that the defendant's failure to appear also resulted in a trial *in absentia.*

¶ 21 The trial judge's Rule 1925(a) opinion refers back to what was said as sentencing and again focused only on the amount of drugs, which is already taken into consideration in the mandatory sentence provisions and the guidelines.[4]

¶ 22 Even if a sentence is within the statutory limits, it is our obligation to review that sentence for reasonableness. It is the obligation of the trial judge first to state a reason for the sentence. Once the sentencing court has set forth its grounds for sentencing, the appellate court must determine whether those grounds are in fact reasonable.

¶ 23 While trial judges have considerable latitude in sentencing, this latitude is not immune from challenge. This issue has been addressed in several recent opinions.

¶ 24 The Pennsylvania Supreme Court in a plurality opinion in *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002), held that a claim of excessiveness can be considered a substantial question even if the sentence is within the statutory limits.

¶ 25 In *Commonwealth v. Walls*, 846 A.2d 152, 156 (Pa.Super.2004), this Court noted that following the imposition of sentencing guidelines in the late 1970's, there has been an effort to eliminate disparity in sentencing, and to no longer allow unfettered discretion in sentencing judges. In *Walls*, our Court overturned maximum consecutive sentences given for sexual assaults on a small child.

¶ 26 Following *Walls*, in *Commonwealth v. Caraballo*, 848 A.2d 1018 (Pa.Super.2004), once again this court struck down maximum sentences run consecutively. Our Court noted that it is not enough merely to say the crime was terrible or that the presentence report was reviewed. It was necessary for the trial court to present enough to the appellate court so that the appellate court can review the facts upon which the judge based his or her sentence.

While the trial court has discretion in granting or denying continuance requests, it has been said that discretion is abused where the defendant's right outweighs the Commonwealth's need for efficient administration. *Commonwealth v. McAleer*, 561 Pa. 129, 748 A.2d 670, 673 (2000). In this case, the record is silent on why Cortez did not appear, and it is difficult to say whether the trial court's need for efficient administration outweighed the Appellant's right to be present. *See Commonwealth v. Pantano*, 836 A.2d 948 (Pa.Super.2003). As noted in *Pantano*, the record in that case, as in this, is devoid "...of a compelling reason to hold the trial in Appellant's absence with due regard to the inherent prejudice arising from trials *in absentia*." [FN1 of *Pantano* opinion—"In this regard, it is noted that other remedies were available to the trial court before resort to the drastic remedy of a trial *in absentia*. For example, a bench warrant could have been issued to secure Appellant's appearance."] While a defendant should appear for trial, at the same time, trial judges should be careful not to deprive a defendant of the right to defend himself or herself. While not specifically raised in this case, the fact that this was a trial *in absentia* can be considered in determining whether there is the appearance of bias as we consider resentencing.

4. All that is said in the opinion is: "The Court's sentencing was appropriate in this case. Our reasoning appears in the notes of testimony. N.T. 5/21/01, 10–12. As we said at sentencing, substantial evidence was introduced indicating Appellant was a drug wholesaler. N.T. 5/21/01, 11. The Court noted, accordingly, Appellant's devastating effect on numerous neighborhoods in this City and on countless families was tremendous. Appellant possessed over four thousand dollars when arrested and over seven thousand dollars was found in the trunk of the vehicle when Carmen Cruz retrieved her purse. He was seen handing out bundles and bundles of narcotics. While out on bail for one drug crime, he was caught selling drugs again. For these reasons, the Court felt that substantial time was warranted in order to protect the community.

¶ 27 In *Commonwealth v. Dodge*, 2004 PA Super. 338, the defendant was a fence, who was found with proceeds from multiple burglaries and found guilty of 37 counts of receiving stolen property. He received a standard range sentence for each offense, but they were run consecutively so the total sentence was 52 to 111 years for property crimes. This Court held that although the sentences were all in the standard range, the total sentence was clearly unreasonable and did not comport with the letter and spirit of the Sentencing Code, 42 Pa.C.S.A. § 9781. In this case as well, this Court must consider the entire sentencing scheme, which includes whether the sentences are run concurrently or consecutively.

¶ 28 In imposing sentence, the Sentencing Code requires the trial court to consider the following factors: 1) the protection of the public; 2) the gravity of the offense in relation to the impact on the victim and community; and 3) the rehabilitative needs of the defendant. 42 Pa.C.S.A. § 9721.

¶ 29 A review of the record shows the trial judge failed to consider these factors during sentencing, focusing exclusively on the retributive aspect of the punishment, along with the protection of the public. Additionally, the trial judge described Cortez's conduct as "spreading his cancer throughout many neighborhoods and many families." This conclusion, however, as noted above, was made without any firm evidentiary support. As a result, the statement appears to be less about Cortez as an Individual and more of a commentary on drug dealers in general. When a sentencing judge displays an agenda against a class of criminals and fails to assess the defendant's individual crime, this constitutes an abuse of discretion and the appellate court must vacate the sentence. *See Walls, supra.*

¶ 30 As we review the full record in this case, we reach the same conclusion as did the panel in the recent case of *Commonwealth v. Whitmore*, 2004 PA Super 365, 860 A.2d 1032, 2004 WL 2086298 (2004). We also determine that based on the record before us, as was said in Whitmore, "the integrity of [the defendant's] re-sentencing proceeding must be protected by ensuring that any appearance of bias is dispelled." We, too, order that a new trial judge be assigned to preside over Cortez' re-sentencing proceedings.

¶ 31 Judgment of sentence vacated. Case remanded for re-sentencing proceedings consistent with this Opinion. Jurisdiction relinquished.

¶ 32 OLSZEWSKI, J., files a Concurring and Dissenting Opinion.

OLSZEWSKI, J., Concurring and Dissenting.

¶ 1 I concur with the majority's conclusion that the trial court did not abuse its discretion in consolidating appellant's two drug charges. I respectfully dissent, however, from the majority's disposition of the sentencing issue.

¶ 2 First, appellant did not raise a substantial question in order to enable our review. In order to raise a substantial question for review, Rule 2119(f) of the Pennsylvania Rules of Appellate Procedure requires appellant's concise statement of reasons for an allowance of appeal to specify "[1] where the sentence falls in relation to the sentencing guidelines ... [2] what particular provision of the Code is violated ... [3] what fundamental norm the sentence violates ... and [4] the manner in which it violates that norm." *Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa.Super.2000). *See also* Pa.R.A.P. 2119(f).

¶ 3 The majority states appellant argued that his sentence was contrary to the fundamental norms underlying the sentencing process, and therefore raises a substantial question. I cannot agree. Specifically, appellant's statement does not indicate the provisions of the code the sentencing court violated, nor does it indicate the fundamental norms that the trial court purportedly violated. While appellant states that his sentence was above the aggravated range, and contends that the trial court improperly considered various factors, the statement does not indicate the violation of either a fundamental norm or of the sentencing code. And, while appellant argues that the trial court improperly considered and weighed certain factors in arriving at the final sentence, this does not raise a substantial question. *Commonwealth v. Griffin*, 804 A.2d 1, 9 (Pa.Super.2002).

¶ 4 Second, even were I to find a substantial question, I cannot agree that appellant's sentence constituted an abuse of discretion. As the majority stated, the sentencing code requires the trial court to consider the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. 42 Pa.C.S.A. § 9721. Here, the trial judge considered the protection of the public (stating "both [locations of the crimes] are very low income neighborhoods" N.T. 5/21/01, at 10.); the gravity of the offense (stating "I also note there was a substantial amount of money recovered ... surveillance indicated he was giving out bundles ... and [was] not just a street level dealer, who I think are very, very serious offenders" N.T. 5/21/01, at 11.); and the individual needs of appellant (stating "then we have an additional circumstance where within a couple of months and within one half block of where he was arrested the first time, he's arrested the second time ... and in addition to that, he was a fugitive and fled" N.T. 5/21/01, at 11.). Furthermore, the court also had before it, and considered, the pre-sentence report. *See Commonwealth v. Griffin*, at 8 (noting that our Supreme Court has ruled that where pre-sentence reports exist, the presumption will stand that the sentencing judge was both aware of and appropriately weighed all relevant information contained therein).

¶ 5 Finally, the majority discusses our recent decision in *Commonwealth v. Whitmore*, 2004 WL 2086298 (Pa.Super.), for the proposition that re-sentencing is required. *Whitmore*, however, involved the double-counting of a prior conviction in addition to a lack of an individualized sentence tailored to the attendant facts of appellant's case. *Id.* at 5. Unlike *Whitmore*, double-counting was not in issue here; and, unlike *Whitmore*, appellant's sentence in the instant matter was clearly tailored to his individual circumstances.

¶ 6 Thus, I would affirm the judgment of sentence.